Marvin **MATTHEWS**, Movant-Appellant,

v.

**STATE** of Missouri, Respondent.

No. 57638.

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1973.

Cox & Moffitt, Dallas W. Cox, Jr., St. Louis, for movant-appellant Marvin Matthews.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

HOUSER, Commissioner.

Marvin Matthews has appealed (prior to January 1, 1972) from a judgment overruling his 27.26 V.A.M.R., motion to vacate three concurrent life sentences entered upon pleas of guilty entered on April 29, 1963 to two charges of forcible rape and one charge of assault with intent to ravish with malice aforethought.

Appellant's first point is that the findings of the circuit court are clearly erroneous in ruling that the pleas of guilty were voluntarily made; that appellant understood the nature of the charges and consequences of pleas of guilty; that he was not misled by promises and had ample opportunity to discuss the three charges with his attorney; and that he admitted the facts constituting the three crimes charged. He argues that under Rule 25.04 the court shall not accept a guilty plea without first determining that the plea is made voluntarily with an understanding of the nature of the charge; that the court did not inquire of him as to the facts leading to these charges; did not advise him that the court was not bound by recommendations made to the court; did not explain the range of punishment on the assault charge; did not elicit any facts from appellant's own mouth as to what acts he had committed which constituted the crimes; did not make inquiry to determine whether he was "knowledgeable of what he was doing"; that there was a failure to comply with Rule 25.04; that the examination of appellant was perfunctory and not carefully done to make sure that appellant was fully informed and that he understood that he was charged with three separate offenses; that he would be sentenced on all three, and the minimum and maximum punishment for each.

In addition to the transcript of the 27.26 hearing we have examined the transcript of the proceedings of April 29, 1963 at which appellant entered the three pleas of guilty. At that hearing appellant stated that he was familiar with the charges, and was specifically informed that he was charged with raping C——— R——— on December 4, 1962; with raping H——— M——— P——— on December 18, 1962 and with assault with intent to ravish H——— S——— on December 26, 1962. (The names were stated in full at the hearing, but are disguised here for obvious reasons.) The 1963 record further shows that appellant agreed with his attorney's statement and inquiry in open court that the two had "talked about these matters at some length"; that appellant had discussed them with his stepfather "at some length"; that appellant had indicated to his attorney that he wanted to plead

guilty to these three charges, and that his attorney had told appellant that he did not recommend that he plead guilty, but that appellant wanted to plead guilty "with the idea that [he would be] sentenced to life imprisonment on each charge but that * * * they'll all run concurrently and not consecutively." Thereupon the assistant circuit attorney took up each case by number, and recited the facts in considerable detail, clearly identifying time and place and stating the acts performed by appellant, giving name, age and race of the victim in each instance and relating ample surrounding circumstances to enable appellant without any possibility of mistake to be fully informed of the charge in each case. The detailed recital by the prosecutor supported acceptance of the pleas. See and compare the bare recital found sufficient in Delany v. State, 475 S.W.2d 102, 103 [1] (Mo.1971), cert. den., 406 U.S. 948, 92 S.Ct. 2053, 32 L.Ed.2d 336. The judge then asked and received from appellant affirmative answers to these questions: whether he understood that in each of the three cases he had a right to a trial by jury if he wanted one; that if tried by jury he might be found either guilty or not guilty; that if found guilty the jury would determine his sentence, which might be less than life imprisonment, at least in the case of the charge of assault with intent to ravish; that the sentence might be more than life imprisonment; that sentences might run consecutively instead of concurrently; that in the two forcible rape cases he might receive the death sentence; that he was entering these pleas of guilty of his own free will. In answer to the question whether any threats or promises had been made to induce him to withdraw his three pleas of not guilty and enter pleas of guilty appellant answered "No, sir." Appellant acknowledged his understanding that his lawyer had not recommended entry of pleas of guilty in these cases, and stated that he was asking the court to accept guilty pleas to these three charges. Appellant was offered but declined the opportunity to make a statement. He had no legal reason why

sentence should not be imposed upon him on the three charges. Thereupon the court received the three pleas and assessed life imprisonment on each charge, the three sentences to run concurrently.

■ While the court did not elicit from the lips of the appellant a recital of the acts he committed, this was not necessary as long as the accused understood the facts as recited by the prosecuting official. From what transpired at the hearing and from the fact that the three pleas of guilty were accepted we must credit the circuit judge with having observed accused and having come to the conclusion that the accused understood what was taking place. "That an accused understands charges with which he is confronted may be deduced from yes and no answers as well as from descriptive factual recitals by accused." Robinson v. State, 482 S.W.2d 492, 495 [5] (Mo.1972). It is true that appellant was not told that the court was not bound by the recommendations made to the court on the matter of punishment, but this was not necessary where the court made and entered the order of concurrent life sentences appellant requested. The range of punishment on the assault charge was not stated (the court did indicate that it graded down to less than life imprisonment) but this is immaterial, since appellant himself acknowledged that he was ready to accept a life sentence on that charge. There is no prejudice in failing to advise an accused of the range of punishment where the sentence the accused is to receive is agreed upon in advance and he receives the expected sentence. Jones v. State, 471 S.W.2d 223, 228 [3] (Mo.1971). Although the court did not explain to appellant the technical elements of the offenses charged, there is no such requirement, as indicated in Jones v. State, supra, it being sufficient that accused has an understanding of the nature of the charge. Contrary to appellant's claim, the entire inquiry was one calculated to determine whether appellant was "knowledgeable of what he was doing." Instead of its being a perfunctory

hearing without carefully informing appellant with respect to the charges, their separability both as to charge and sentence, and the range of punishment, we find that the hearing was carefully conducted and that the handling of these three charges was thorough and personalized.

■ Appellant's claim that his pleas were involuntary is not supported by credible evidence. His contention that his guilty pleas resulted from his fear of the death penalty "does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The claim of coercion fails. The claim that his attorney promised appellant that he would only have to serve 7 or 8 years was disputed by his attorney. The court below evidently believed the attorney and disbelieved appellant.

On this record the court's findings and judgment on the voluntariness of the pleas and appellant's knowledge and understanding of what he was doing are not clearly erroneous, but are fully justified.

Appellant's second point is that he was denied effective assistance of counsel because his attorney "failed to investigate the facts of the case by deposition of witnesses or otherwise, failed to consult with movant concerning the charges and did not explain the elements of the charge[s] to movant." Specific complaint is made of failure to interview any witnesses in the rape cases, or to investigate the element of penetration or other elements of the crime; failure to investigate the reputation of the complaining witness in the assault case; failure to question the examining psychiatrist's report or move for a hearing to contest the report and failure to try to establish incompetency to stand trial or assist in his defense and to establish legal incompetency.

The first of the three cases set for trial was the charge of assault with intent to ravish H———— S————. Counsel interviewed her in an attempt to break down her identification of appellant. He took her deposition. Counsel interviewed appellant between five and ten times; discussed the situation with appellant's mother and stepfather; interviewed the principal where appellant had been in school; reviewed appellant's school records. He saw no point in interviewing the police officers whose names were endorsed on the information. (There was no claim that they were eyewitnesses.) Appellant provided counsel with no leads for investigation. There is nothing to indicate that appellant ever claimed to be innocent of any of the three charges. On the morning the assault case was set for trial, after the jury panel had assembled in the courtroom, appellant informed counsel that he desired to plead guilty, for the stated purpose of avoiding the death penalty. Counsel had not advised a guilty plea because he did not think a jury would assess the death penalty in the case of a 17–year-old defendant. He had intended to go to trial and force the State to prove its case. After entry of the pleas there was no occasion to further investigate the other two cases, which had not been set for trial.

■ Since pleas of guilty were entered the determination of the adequacy of the legal representation becomes immaterial, unless counsel was incompetent in such a manner as to affect the issues of voluntariness and understanding. Barylski v. State, 473 S.W.2d 399, 402 [2] (Mo.1971). No such showing has been made. Nevertheless, the circuit court in its memorandum made a thorough analysis of the representation afforded this appellant, pointing out that counsel is a Michigan University Law School graduate, winner of the Lon Hocker Trial Lawyers' Award, and an experienced trial attorney; that he conferred with appellant five or ten times; filed motions to produce and for a psychiatric examination in all three cases; explained the range of punishment and discussed with appellant the charges in all three cases; interviewed the high school principal; procured appel-

lant's high school grades; reviewed the psychiatric report; conferred with the prosecutor; informed appellant that the prosecutor would recommend life imprisonment on pleas of guilty; recommended that appellant take his chances before a jury, based on counsel's conclusion that no jury would give appellant the death penalty, due to his age; conferred with the parents; interviewed all witnesses in the assault case except the police officers, and in particular interviewed and deposed the victim, to test her identification; that counsel believed appellant was sane and that the jury would believe the victim's testimony, including her ability and opportunity to identify appellant. The circuit court concluded that appellant was not denied effective assistance of counsel but was ably represented at all stages by his court-appointed counsel; that counsel investigated and interviewed material witnesses, advised appellant of the range of punishment, right to trial by jury, recommended that the cases be tried by a jury and consulted with appellant many times.

 There is an evidentiary basis for the court's findings and conclusions in the matter of representation. There is no basis for a claim that by more extensive investigation counsel could have discovered evidence of appellant's innocence, or uncovered facts which would have weakened the State's cases against appellant. Under the circumstances shown in this case counsel was not derelict in not pressing for a hearing on the question of appellant's mental responsibility or competence to stand trial or cooperate in his own defense. While there is no evidence that counsel explained to appellant the technical elements of the offense charged, there is no such requirement, it being sufficient that the person charged has an understanding of the nature of the charge (as in the case of failure of the court to make such an explanation, Jones v. State, supra). On the whole record there has been a failure to meet appellant's burden of demonstrating a denial of effective assistance of counsel.

The findings and conclusions of the trial court on this phase of the case are not clearly erroneous.

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.